IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| | | |
|---|---|---|
| JAMIE WINEGAR and wife MELANIE WINEGAR, | ) ) ) | |
| Plaintiffs, | ) ) ) | |
| v. | ) ) | No. 2:07-CV-209 |
| CHARTER COMMUNICATIONS, INC., CHARTER COMMUNICATIONS, LLC, and CHARTER COMMUNICATIONS HOLDING COMPANY, LLC, | ) ) ) ) ) ) | |
| Defendants. | ) | |

## **MEMORANDUM**

Now before the court is the motion for summary judgment [doc. 65] filed by defendants Charter Communications, Inc., Charter Communications, LLC, and Charter Communications Holding Company, LLC (collectively, "Charter"). Plaintiffs have filed a response in opposition.

Also before the court is the amended motion for summary judgment [doc. 59] filed by defendant K&M Cable, LLC ("K&M"). Plaintiffs have not responded to that filing, but the Charter defendants have. K&M has submitted a reply.

The court finds genuine issues of material fact pertaining to both motions. Both motions will therefore be denied.

I.

*Summary Judgment Standard*

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party may discharge its burden by demonstrating that its opponent has failed to establish an essential element of that party's case for which it bears the ultimate burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

After the moving party has carried its initial burden of showing that there are no genuine issues of material fact in dispute, the burden shifts to the non-moving party to present specific facts demonstrating a genuine issue for trial. *Matsushita Elec. Indus. Co., v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). In order to defeat a motion for summary judgment, the non-moving party must present significantly probative evidence. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986). The non-movant's evidence is to be believed, and all justifiable inferences are to be drawn in that party's favor. *Id.* at 255.

II.

*Background*

In July 2006, plaintiff Jamie Winegar climbed a utility pole near the Boyd Street Apartments to perform repair work within the scope of his employment with Holston Electric Cooperative ("Holston"). This work was necessitated by fallen tree damage to

electrical lines during what Mr. Winegar terms a "big" or "major" storm. While climbing the pole, Mr. Winegar fell to the ground due to (according to the amended complaint) "a large loop of excess cable left by Charter and K&M Cable, Inc." Plaintiffs allege that the defendants were negligent in leaving, and in failing to properly secure, "too much excess cable on the pole so as to constitute a hazard to linemen." The amended complaint further alleges that the defendants "were negligent in failing to cut and run cable in a safe and proper manner."

In 2000, Charter engaged K&M to perform work on cable lines near the Boyd Street Apartments. That work included running new cable up the utility pole from which Mr. Winegar fell more than five years later. According to the testimony of Charter inspector Donald Hause and former Charter project manager Larry Wilson, it was *not* K&M's responsibility to connect the new cable to the existing cable at the top of the pole. K&M left five or six feet of excess cable for another entity (Charter or another contractor) which would connect the new and existing cables and discard the surplus. This procedure appears to be consistent with the requirements of the Charter Communications Upgrade Handbook.

Mr. Wilson further testified that K&M's work would have had to pass Charter's quality control inspection before K&M would have been paid. At his deposition, Mr. Wilson was shown a photo of the loose cable loop that is alleged to have caused Mr. Winegar's fall. Mr. Wilson testified that, if K&M had left the cable in that condition in 2000, Charter would have forced K&M to return to the job site and correct the problem. Mr.

3

Wilson directly stated, "We would not allow them to leave a cable like this." Based on the above evidence, K&M moves for summary judgment arguing that it cannot possibly be the party responsible for the excess cable.

Two expert witness statements have been provided to the court. Charter has submitted the affidavit of electrical engineer Edward Brill. Mr. Brill has reviewed the pleadings and depositions in this case along with the photos referenced in the depositions. Mr. Brill has also visited and inspected the accident site and has concluded,

> Specifically, in my expert opinion, the loop of excess cable wire at issue in this case was created when a tree located in the lot behind the apartment building fell, breaking several power lines. This tree in turn struck the communication messenger cable pulling the messenger cable in the direction of the tree which created a loop in the cable conductor attached to the messenger cable on the pole that Mr. Winegar climbed.

Mr. Hause and Stephen Kidd, a former partner in K&M, have also expressed the opinion that the loose cable was caused by a falling tree. Mr. Winegar testified that storm winds had blown trees onto the electrical lines. Based on this evidence, Charter moves for summary judgment contending that the proximate cause of Mr. Winegar's injury was an "act of God" for which Charter cannot be liable. *See, e.g., Davis v. Country Club, Inc.*, 381 S.W.2d 308 (Tenn. Ct. App. 1963).

Plaintiffs have submitted the affidavit and report of mechanical engineer Jeffery Warren, who also has visited and inspected the accident site. It is Mr. Warren's opinion "that the cable loops in question were not caused by a storm or any weather related

4

event and the loop[s] existed prior to the storm in question . . . [and] were caused by an incorrect installation." More specifically, Mr. Warren opines,

> The tree limb that fell was too small to shift the cable television line . . . .
>
> The cable television line was installed on the wrong side of the pole.
>
> . . .
>
> The cable could and should have been installed on the other side of the pole.
>
> . . .
>
> Had the cable been installed on the other side of the pole, the service lines going to the house [sic] could have been attached to the splice block and turned downward into the conduit on the side of the pole with no loop protruding into the climbing area.

Holston employee Arthur Davenport has similarly testified that the fallen tree was too small to displace the cable and that "[i]f the cable had been on the other side of the pole, the loop could have been much smaller."

### III.

*Analysis*

K&M's summary judgment motion must be denied. In focusing its argument on who was responsible for leaving excess cable atop the pole in 2000, K&M ignores other theories of liability. Most specifically, K&M disregards plaintiffs' allegation that the defendants "were negligent in failing to cut and run cable in a safe and proper manner." The statements of Mr. Warren and Mr. Davenport support the theory that the cable was incorrectly installed on the wrong side of the power pole, resulting in the loop of cable that

allegedly then caused Mr. Winegar's fall. Accordingly, there exists a genuine issue of material fact as to whether K&M was "negligent in failing to cut and run cable in a safe and proper manner."[1]

Charter's summary judgment motion must also be denied. The statements of Mr. Warren and Mr. Davenport raise a genuine issue of material fact regarding Charter's "act of God" argument. Mr. Warren opines that the cable loop predated the storm, and both Mr. Warren and Mr. Davenport state that the falling tree was too small to displace the cable. Moreover, evidence that the cable was installed on the wrong side of the pole (which would have been approved by Charter's quality control inspection) raises a genuine issue of material fact as to whether Charter was "negligent in failing to cut and run cable in a safe and proper manner." *See Davis*, 381 S.W.2d at 310-11 (where negligence joins with an act of God to form proximate cause, summary judgment is improper).

The question of comparative fault in this case (including the comparative fault of plaintiff Jamie Winegar) is a question for the jury. This civil action remains set for trial to commence on January 24, 2011, in Greeneville. An order consistent with this opinion will be entered.

ENTER:

s/ Leon Jordan
United States District Judge

---

[1] In citing only this particular theory of liability, it is *not* the court's intention to make a finding as to which party is responsible for the excess cable, if any, that was left *atop* the pole during installation.